[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-12541

Non-Argument Calendar

_____

MICHAEL DOMBROWSKI,

Plaintiff-Appellant,

*versus*

LEGACY MOUNTAIN HOMEOWNERS ASSOCIATION INC,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 5:23-cv-00899-AMM

_____

Before JILL PRYOR, BRASHER, and ANDERSON, Circuit Judges.

PER CURIAM:

Michael Dombrowski appeals the dismissal of his adversary proceeding against Legacy Mountain Homeowners Association, Inc. ("Legacy"). On appeal, Dombrowski argues that the bankruptcy court erred when it applied the incorrect standard of review under Federal Rule of Civil Procedure 12(b)(6); when it found that Legacy was not a creditor of his and therefore not bound by the terms of his confirmed Chapter 11 Plan; and when the court found that Legacy was not bound by the Plan despite receiving notice.

## I. BACKGROUND

Dombrowski was the sole owner of Blue Mountain Properties, LLC ("Blue Mountain") and MGD RR3, LLC ("MGD"), limited liability companies that owned and rented vacation properties in Legacy's planned development in Tennessee. Both Blue Mountain and MGD were administratively dissolved by their respective state's Secretary of State: Blue Mountain was dissolved in 2012 by Georgia's and MGD was dissolved by Tennessee's in 2011. Legacy has annual dues that are voted on during the annual meeting of members of the community.

When Dombrowski filed for bankruptcy in 2016, he listed Legacy as a creditor with two claims, one of which he disputed. Legacy was sent a notice of Dombrowski's bankruptcy but did not respond or participate. Dombrowski included the properties owned by Blue Mountain and MGD and the associated debt in

Class 23 of his Plan; he planned to use rental payments and sales from the properties to fund the Plan.  The Plan was confirmed in 2017.

In June 2022, Dombrowski filed an adversary proceeding— i.e. a complaint against Legacy alleging that it violated the automatic stay by taking several actions to collect pre-petition claims arising from overdue dues.  The bankruptcy court dismissed the action, concluding that Blue Mountain and MGD were responsible for the dues, not Dombrowski, so Legacy was not a creditor of Dombrowski that could be bound by his Plan.  In determining that Legacy was not a creditor of Dombrowski, the bankruptcy court examined Georgia and Tennessee law as well as the Master Deed and Bylaws that determine Legacy's ability to collect dues.  The bankruptcy court noted that Blue Mountain and MGD owned the properties in Legacy in fee simple and that Dombrowski's membership interests in those two entities were mere personal property under state law.  Because the fee simple owner of the properties is liable for the dues to Legacy, only Blue Mountain and MGD were liable—not Dombrowski. The court also pointed to Dombrowski's Plan, which recognizes that the properties are owned by Blue Mountain and MGD and not protected by the Plan.  The Plan also provided Dombrowski with a method of bringing the properties under the protection of the Plan by distributing them to himself. But because there was no evidence that such a distribution had taken place, Legacy remained a creditor of the MGD and Blue Mountain but not Dombrowski.

4                    Opinion of the Court                    24-12541

Dombrowski appealed to the district court which affirmed, concluding that the bankruptcy court was correct.

## II.  STANDARD OF REVIEW

"In the bankruptcy context, this court sits as a 'second court of review' and thus 'examines independently the factual and legal determinations of the bankruptcy court and employs the same standards of review as the district court.'" *In re Optical Techs., Inc.*, 425 F.3d 1294, 1299–300 (11th Cir. 2005) (*quoting In re Issac Leaseco, Inc.*, 389 F.3d 1205, 1209 (11th Cir. 2004) (quotation marks and citation omitted)).  We generally review legal conclusions by either the bankruptcy court or the district court de novo and the bankruptcy court's findings of fact for clear error. *Id.* (*citing In re Financial Federated Title & Trust, Inc.*, 309 F.3d 1325, 1328–29 (11th Cir. 2002)).

## III.  DISCUSSION

*A .  Incorrect standard under Rule 12(b)(6)*

Dombrowski argues that the bankruptcy court used the incorrect standard when deciding the motion to dismiss and that his complaint states a claim.   At the heart of his argument is his claim that the bankruptcy court interpreted the meaning of creditor too narrowly, under bankruptcy law.  This, however, is a legal question that he addresses in his next argument section.  We do the same.

B. *Is Legacy a creditor of Dombrowski?*

Dombrowski argues that Congress intended for the broadest possible definition of what constitutes a claim under the Bankruptcy Code. As such, contingent claims, unenforceable claims, and claims that have not yet accrued or become cognizable would fall under the definition. He argues that under state law, because the entities were administratively dissolved, they could not conduct business and thus liability would revert back to him, as the sole member.

The guiding bankruptcy law is as follows. "The term 'claim' means [a] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ." 11 U.S.C. § 101(5)(A). A "claim" also includes a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." *Id*. § 101(5)(B). Finally, "[t]he term 'creditor' means [an] entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." *Id*. § 101(10)(A).

As the courts below noted, Legacy's governing documents assign the owner of the property in fee simple as the entity who is a member of Legacy's association and who is liable for the dues. We look to the state law governing each corporation to determine if the administrative dissolution of the same affected that liability.

Under Georgia law, "[a] limited liability company interest is personal property. A member has no interest in specific limited liability company property." O.C.G.A. § 14-11-501(a). "A corporation administratively dissolved continues its corporate existence but may not carry on any business except that necessary to wind up and liquidate its business and affairs under Code Section 14–2–1405. O.C.G.A. § 14-2-1421(c). Section 14-2-1405 in turn sets out those permissible activities, which include collecting assets, distributing properties among shareholders, and the catchall "[d]oing every other act necessary to wind up and liquidate its business and affairs." O.C.G.A. § 14-2-1405.

The crucial issue in this case is whether Dombrowski, the sole member of this limited liability company has become liable for the debts of the administratively dissolved company. Or, stated another way, that crucial issue is whether Legacy is a creditor of Dombrowski, or only of the limited liability company.

That crucial issue was addressed in *Fulton Paper Company, Inc. v. Reeves*, 212 Ga.App. 314, 441 S.E.2d 881 (Ga. Ct. App.1994). The Georgia Court of Appeals in *Fulton Paper* held that personal liability may not be based on the theory that an officer of an administratively dissolved corporation was acting for a nonexistent principal. *Id.* at 316, 441 S.E.2d at 884. There, the court rejected a seller of goods' attempt to assign personal liability to the president of an administratively dissolved corporation who had continued to conduct business and incur debt on behalf of the corporation after its administrative dissolution. Further, it held that the seller could not

maintain an action against the president personally based on the ultra vires acts of the corporation. *Id.* at 317, 441 S.E.2d at 884-85. The Court of Appeals looked to the O.C.G.A. § 14–2–1405 Comment, which distinguished administrative dissolution from common law dissolution. In a common law dissolution, equitable title to corporate property vests in the shareholders. By contrast, *Fulton Paper* held that administrative dissolution has "none of the characteristics of common law dissolution." *Id.* at 317 n.3, 441 S.E.2d at 884 n.3. Rather, *Fulton Paper* held that the administratively dissolved corporation there continued to exist as a corporate entity and therefore there was no basis for imposing personal liability on its president even with respect to an *ultra vires* corporate act. *Id.* at 317, 441 S.E.2d at 884-85.

Similarly, under Tennessee law "[a] membership interest in an LLC is personal property. A member has no interest in specific LLC property. All property transferred to or acquired by an LLC is property of the LLC." Tenn. Code Ann. § 48-249-502(a). As in Georgia, an LLC's administrative dissolution is not the same thing as termination: "[a]n LLC administratively dissolved continues its existence but may not carry on any business except that necessary to wind up and liquidate its business and affairs under § 48–249–601 and notify claimants under § 48–249–611." *Id.* § 48–249–605(c). The LLC only ceases to exist when articles of termination are filed on behalf of the LLC. *Id.* § 48–249–608(a)(2); *see also Bowers v. Estate of Mounger*, 542 S.W.3d 470, 483 (Tenn. Ct. App. 2017) ("Only upon the filing of such articles of termination does the LLC cease to exist.").

As with respect to Blue Mountain and Georgia law, the crucial issue with respect to MGD and Tennessee law is whether Dombrowski, the sole member of the Tennessee limited liability company, has become liable for the debts of the administratively dissolved MGD (or, in other words, whether Legacy is a creditor of Dombrowski). Under Tennessee law, if a dissolving limited liability company has not otherwise disposed of claims against it, then the claimant can enforce its claim:

> (1) Against the dissolved LLC, to the extent of its undistributed assets; or

> (2) If the assets have been distributed in liquidation, against a member or holder of financial rights of the dissolved LLC to the extent of the member's or holder's pro rata share of the claim, or the LLC assets distributed to the member or holder in liquidation, whichever is less, but a member's or holder's total liability for all claims under this section may not exceed the total amount of assets distributed to the member or holder; provided, that a claim may not be enforced against a member or holder of a dissolved LLC who received a distribution in liquidation after three (3) years from the date of the filing of articles of termination.

Tenn. Code § 48-249-611(d). Because MGD has a continued existence notwithstanding its administrative dissolution, only MGD is liable to Legacy—not Dombrowski, and Legacy accordingly is not a creditor of Dombrowski. Moreover, section 48-249-611(d) makes clear that, even if there had been a common law dissolution, a

member like Dombrowski would be liable only if the assets of the limited liability company had been distributed to him—which of course is not alleged to have occurred in this case.

Dombrowski points to several cases in support of his argument but all are distinguishable or inapplicable.    First, Dombrowski cites *Gas Pump, Inc. v. Gen. Cinema Beverages of N. Fla., Inc.*, 263 Ga. 583, 436 S.E.2d 207 (1993), to support his argument that Blue Mountain could not still be liable for the overdue dues.  In *Gas Pump*, an administratively dissolved company filed an antitrust case against a former supplier.  The Georgia Supreme Court held that the company lacked the capacity to bring a suit because, reading O.C.G.A. §§ 14-2-1405, 14-2-1421, and 14-2-1422 together, it held that the time in which an administratively dissolved corporation could initiate activities necessary to winding up and liquidating its assets was two years.  263 Ga. at 584, 436 S.E.2d at 208-09.   However, the case does not speak to the issue before us of whether the liabilities and debts of an administratively dissolved corporation were automatically transferred to the sole member.  Rather, it merely holds that the dissolved corporation *cannot initiate* any actions after a two-year period.

Next, Dombrowski relies on *In re United States Pipe & Foundry Co.*, 32 F.4th 1324, 1330 (11th Cir, 2022), for its statement that "any liability on a claim based on the debtor's conduct that occurred before the effective date of reorganization is dischargeable so long as there is a relationship between the debtor and creditor before that date."  However, this puts the cart before the horse

because Dombrowski first needs to establish that Legacy is his creditor, as opposed to being the creditor of Blue Mountain and MGD. He relies on *Midland Funding, LLC v. Johnson*, 581 U.S. 224, 137 S. Ct. 1407 (2017), to support his argument that Legacy's claim against the companies was equivalent to a contingent claim. But in *Midland*, the claim that the Supreme Court recognized was one barred by the statute of limitations, something that could be tolled. By contrast, here, the claim is against a different entity.

Finally, we note, as did the bankruptcy court, that Dombrowski's Plan specifically instructed him on how to distribute to himself the properties of the limited liability companies, which presumably would also distribute the liability and cause Legacy to be his own creditor. Notwithstanding that he knew how to make Legacy his own creditor, he never did so. Whether intentional or inadvertent, what Dombrowski asks of us is to allow him to shield himself generally from liability for claims against his limited liability companies but make only a single exception for his benefit—i.e. let him assume this particular liability to Legacy thereby making Legacy his creditor. We decline the invitation. Similarly, we reject Dombrowski's conclusory assertions in his brief that the limited liability companies might be his mere alter egos. There are no factual allegations in Dombrowski's complaint to support his conclusory assertions. Moreover, the alter ego doctrine of piercing the corporate veil

> fastens liability on the individual who uses a corporation merely as an instrumentality to conduct his own personal business, and such liability arises from fraud

24-12541                Opinion of the Court                        11

> or injustice perpetrated not on the corporation but on third persons dealing with the corporation. [Footnote omitted.] The corporate form may be disregarded only where equity requires the action to assist a third party. [Footnote omitted.] Accordingly, a sole shareholder may not choose to ignore the corporate entity when it suits his convenience. [Footnote omitted.]

1 Fletcher Cyclopedia on the Law of Private Corporations, § 41.10, at 397 (1983).

For the foregoing reasons,[1] the courts below properly concluded that Legacy was not a creditor of Dombrowski, and properly dismissed his adversary proceeding against Legacy.

AFFIRMED.

---

[1] We reject Dombrowski's argument that Legacy should be bound because it received notice of the Plan.  Only creditors will be bound by such notice so the fact that Legacy received notice is of no moment.